1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
ALEX. A. GRAFT, SB# 239647
2    E-Mail: Alex.Graft@lewisbrisbois.com
45 Fremont Street, Suite 3000
3  San Francisco, California 94105
Telephone: 415.362.2580
4  Facsimile:  415.434.0822

5  Attorneys for Defendant
CRAIG C.O. WATERS, ESQ.
6

7

8                UNITED STATES DISTRICT COURT

9       EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

| | |
|---|---|
| 11  PAUL V. SINGER, an individual, | Case No. 1:25-cv-00532-KES-SAB |
| 12         Plaintiff, | **DEFENDANT CRAIG C.O. WATERS, ESQ.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| 13         vs. | |
| 14  CRAIG C.O. WATERS, ESQ., in his official capacity; STATE BAR OF | |
| 15  CALIFORNIA, OFFICE OF CHIEF TRIAL; KRISTIN CHARLES, in her | |
| 16  official capacity; STATE BAR OF CALIFORNIA, OFFICE OF | Date:    November 5, 2025 |
| 17  GENERAL COUNSEL; LOUISA AYRAPETYAN, in her official | Time:    10:00 a.m. Crtrm.: 9 |
| 18  capacity; STATE BAR OF CALIFORNIA, OFFICE OF | District Judge:  Kirk E. Sherriff Magistrate Judge: Stanley A. Boone |
| 19  GENERAL COUNSEL; BRANDON N. STALLINGS, in his official | |
| 20  capacity; and DOES 1-40, | Trial Date:          None Set |
| 21         Defendants. | |

22

23      **I.    INTRODUCTION**

24         Plaintiff Paul V. Singer ("Singer") has requested that this Court permit him to

25  file a second amended complaint. However, Singer's proposed amended complaint

26  is as futile as his previous two complaints.[1] Singer's proposed amended complaint

27

---

28  [1] Attorney Waters has a motion to dismiss and an anti-SLAPP motion regarding Singer's amended
(footnote continued)

DEFENDANT CRAIG C.O. WATERS, ESQ.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT

brings multiple claims against Attorney Craig Waters ("Attorney Waters") arising from Attorney Waters filing an accurate substitution of attorney in the underlying State Court Action. Thus, Singer's proposed amended complaint cannot survive scrutiny and should be stricken from the record.

First, Singer's complaint runs afoul of California's litigation privilege, the *Noerr-Pennington* doctrine, and the *Rooker-Feldman* doctrine. Singer is attempting to utilize this Court to vacate a judgment entered against him by the Fresno Superior Court. However, this Court does not have jurisdiction to render the relief Singer seeks. Nor may Singer base his federal action on Attorney Waters' state court petitioning activities.

Indeed, even if this Court had jurisdiction to consider Singer's claims, Singer's complaint would still be futile. It is readily apparent from the face of the substitution of attorney that Attorney Waters complied with all applicable California Rules of Court and informed all parties of his change in address. Therefore, the substitution of attorney insured that the State Court Action continued smoothly.

Attorney Waters respectfully requests that this Court deny Singer's motion for permission to file a second amended complaint. The proposed complaint is futile and no amount of amendments can remedy its many errors.

## II.    FACTUAL AND PROCEDURAL HISTORY

Singer initiated this action on May 6, 2025, when he filed a complaint against Attorney Waters and other defendants arising from Attorney Waters' purported actions in *Paul Singer vs. Brian Weldon*, Case No. 18CECG03151, a state court action filed in Fresno Superior Court ("State Court Action"). (Doc #1, Complaint, pp. 2–3.) Singer's original complaint alleged causes of action for deprivation of constitutional rights, fraud and intentional misrepresentation, equitable relief, and violation of FRCP 11. (Doc. #1, Complaint, p. 1.)

---

complaint pending in this Court. (Docs. #27 & #28.)

DEFENDANT CRAIG C.O. WATERS, ESQ.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

In response, Attorney Waters filed an anti-SLAPP motion to strike the state law causes of action in Singer's complaint as well as a motion to dismiss Singer's entire complaint. (Docs. #11 & #12.) Singer filed an amended complaint in response to Attorney Waters' motions. (Doc. #21, First Amended Complaint.) Singer's first amended complaint contained largely the same causes of action and allegations as the original complaint. (Docs. #1 & # 21.) This Court permitted Singer to file the amended complaint but cautioned him that he could not "simply file a second amended complaint in opposition to any future motion to dismiss." (Doc. #20, p. 2.)

After this Court permitted Singer to file his first amended complaint, Attorney Waters filed an anti-SLAPP motion to strike the state law causes of action in the amended complaint and a motion to dismiss the amended complaint. (Docs. #27 #28.) Singer opposed the motion to dismiss but not the anti-SLAPP motion. (Doc. #38, Consolidated Opposition.) On July 29, 2025, this Court ruled that the motion to dismiss and the anti-SLAPP motion were submitted and no new filings pertaining to each motion would be considered. (Doc. #41)

Singer requested permission to file his second amended complaint on September 2, 2025. (Docs. #46 & #48.) His proposed second amended complaint alleges the following causes of action against Attorney Waters: deprivation of constitutional rights under 42 U.S.C § 1983, conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2)(3), fraud on the court, negligence per se, and intentional infliction of emotional distress ("IIED"). (Doc. #48, Second Amended Complaint ["SAC"], pp. 16–21.) Singer based his causes of action against Attorney Waters on Attorney Waters' purported filing of a fraudulent substitution of attorney during the State Court Action and the trial court's entry of numerous minute orders during the State Court Action. (Doc. #48, SAC, pp. 1–16.) None of Singer's allegations against Waters can survive scrutiny.

///

///

DEFENDANT CRAIG C.O. WATERS, ESQ.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

1

2

### III.   LEGAL ARGUMENT

#### A. Legal Standard.

Federal Rule of Civil Procedure 15(a) provides that a party may amend their complaint once "as a matter of course." After a plaintiff has amended his complaint "once as a matter of course", the plaintiff "may amend the [his] pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, a district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended the complaint. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987).

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014), quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Additionally, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), superseded by statute on other grounds. "The test for futility is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009), citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Woods v. First Am. Title, Inc.*, No. CV-111284-GHK (VBKx), 2011 WL 13218022, at *2 (C.D. Cal. Sept. 20, 2011) ("Futility of amendment is analyzed much like a Rule 12(b)(6) motion to dismiss—an amended complaint is futile when it would be subject to dismissal").

In this case, Singer's proposed second amended complaint cannot survive the futility test because he cannot overcome the deficiencies highlighted in Attorney Waters' motion to dismiss his first amended complaint. Singer's amended complaint is still subject to California's litigation privilege, the *Rooker-Feldman* doctrine, and

the *Noerr-Pennington* doctrine. Additionally, Singer's proposed second amended complaint does not plead cognizable claims for fraud on the court, conspiracy to interfere with civil rights, negligence per se, and intentional infliction of emotional distress. Thus, Attorney Waters respectfully requests that this Court deny Singer's motion for permission to file a second amended complaint.

### B. The Litigation Privilege Under California Civil Code Section 47 Serves as an Absolute Bar to Singer's State Law Claims.

In his second amended complaint, Singer alleges state law claims for negligence per se and IIED. (Doc. # 48, SAC, pp. 16–21.) His state law claims are barred by the California litigation privilege under California Civil Code section 47.

A publication or broadcast made in any judicial proceeding is absolutely privileged according to California law. Cal. Civ. Code, § 47(b)(2) ("A privileged publication or broadcast is one made: . . . .(b) In any . . . (2) [j]udicial proceeding. . ..."). This litigation privilege affords litigants and witnesses unfettered access to the court without fear of being harassed by derivative tort actions. *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990) (*Silberg*). Although originally enacted with reference to defamation, the privilege is now held applicable to any communication, whether or not it amounts to publication, **and to all torts except malicious prosecution**:

> In furtherance of the public policy purposes it is designed to serve, the privilege **described by § 47(2) has been given broad application**. Although originally enacted with reference to defamation (citations), the privilege is now held applicable to any communication, whether or not it amounts to a publication (citations), and all torts except malicious prosecution. (Citations.)

*Silberg*, 50 Cal. 3d at 211–12, emphasis added; *see also Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006); *Hagberg v. California Federal Bank FSB*, 32 Cal. 4th 39, 47 (2004) (*Hagberg*).

In *Silberg*, plaintiff argued that the litigation privilege should only apply to statements made in the furtherance of justice. The California Supreme Court rejected the application of an "interest of justice" test because such a test was ***"inconsistent with the absolute nature of the litigation privilege*** and its underlying

policy purposes." *Silberg*, 50 Cal. 3d at 209, emphasis added. The *Silberg* decision

discusses the important policy concerns furthered by the litigation privilege.

> The principle purpose of § 47(2) is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by ***derivative tort actions***. (Citations.) . . . .

> Given the importance to our justice system ***of insuring free access to the courts***, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and ***avoiding unending litigation***, it is not surprising that § 47(2), the litigation privilege, has been referred to as 'the backbone to an effective and smoothly operating judicial system.' (Citation.)
> . . .
> ***To effectuate its vital purposes, the litigation privilege is held to be absolute in nature***.
> *Silberg*, 50 Cal. 3d at 213–15, emphasis added.

Similarly, in *Friedman v. Knecht*, 248 Cal. App. 2d 455 (1967) (*Friedman*),

the Court of Appeal held that any doubt as to the application of the litigation

privilege should be resolved in favor of the defendant.

> ***At all events, it is held that doubts are to be resolved in favor of relevancy and pertinency***; that is to say, the matter to which the privilege does not extend must be so palpably wanting in relation to the subject matter of the controversy that there can be no reasonable doubt of its impropriety. If the privilege is worth having, its purpose would be largely defeated if it were to vanish simply because one possible meaning of a statement made during judicial proceedings does not relate to them.

> *Friedman*, 248 Cal. App. 2d at 460, emphasis added.

The courts have accordingly given broad application to the litigation

privilege. "To be privileged under subdivision 2 of §47, the matter need not be

relevant, pertinent or material to any issue before the court, it only need have some

connection or some relation to the judicial proceeding." *Smith v. Hatch*, 271 Cal.

App. 2d 39, 46 (1969). In *Rubin v. Green*, 4 Cal. 4th 1187, 1193–94 (1993), the

California Supreme Court similarly held:

> For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47 (b). At least since then-Justice Traynor's opinion in *Alberston v. Raboff* (1956) 46 Cal.2d 375, California courts have given the privilege an expansive reach. . . .
> In light of this extensive history, it is late in the day to contend that communications with 'some relation' to an anticipated lawsuit are not within the privilege.

1    Accordingly, in *Pollock v. University of Southern California*, 112 Cal. App.
2  4th 1416, 1430 (2003) (*Pollock*), the appellate court held that a party's perjurious
3  declaration and personal e-mails were within the scope of the litigation privilege
4  because they related to potential and actual litigation, despite plaintiff's contention
5  that both communications qualified as tortious conduct. Indeed, as the Court noted
6  in *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App.
7  4th 54, 78 (2003) (*Shafer*), "[b]ecause the privilege applies without regard to malice
8  or evil motives, it has been characterized as absolute." In *Hagberg*, 32 Cal. 4th 39,
9  64, the California Supreme Court held that a bank employee's statements to the
10 police regarding a customer's possession of an alleged counterfeit check were
11 absolutely privileged. Likewise, in *Herterich v. Peltner*, 20 Cal. App. 5th 1132,
12 1142 (2018) (*Herterich*), the court noted that even committing a fraud upon the
13 court is protected by the litigation privilege: "[w]hile we by no means condone
14 intentionally deceptive conduct before the courts, the litigation privilege is
15 absolute."

16    Here, Singer contends Attorney Waters made intentional misrepresentations
17 to the trial court in the State Court Action when he filed a substitution of attorney
18 with the court. (Doc. #48, SAC, pp. 10–11, 19–21,) Singer also contends that
19 Attorney Waters committed misconduct when he accepted the minute orders made
20 by the trial court in the State Court Action without challenge. (Doc. #48, SAC, pp.
21 3–10, 19–21.) He bases his negligence per se claim and his IIED claim on the
22 content of the court documents. (*Id.* at pp. 3–11, 19–21.) There are no allegations
23 involving Attorney Waters' conduct outside of the State Court Action on which
24 Singer bases his claims. Therefore, Singer's state law claims against Attorney
25 Waters are absolutely barred by the litigation privilege, regardless of whether they
26 include unsubstantiated allegations that Attorney Waters lied to the court. *Pollock*,
27 112 Cal. App. 4th at 1430; *Shafer*, 107 Cal. App. 4th at 78; *Herterich*, 20 Cal. App.
28 5th at 1142.

## C. The *Noerr-Pennington* Doctrine Bars Singer's Federal Claims.

Singer alleges three federal claims against Attorney Waters in his second amended complaint. They are deprivation of constitutional rights under 42 U.S.C § 1983, conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2)(3), and fraud on the court under Federal Rule of Civil Procedure 60(b). (Doc. #48, SAC, pp. 16–21.) Singer bases all three of his federal claims on the content of the substitution of attorney and the State Court Action minute orders. (Doc. #48, SAC, pp. 3–10, 16–18.) According to Singer, Attorney Waters made false statements in the substitution of attorney of attorney and unlawfully exploited the State Court Action minute orders. (*Id.*) However, because Singer has based his federal claims on documents filed in the State Court Action, all of those claims are barred by the *Noerr-Pennington* doctrine.

"The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643–44 (9th Cir. 2009) (*Kearney*), citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (*Sosa*). "To determine whether a defendant's conduct, which allegedly violates a statute is immunized under *Noerr-Pennington*, [federal courts] apply a three-step analysis to determine: (1) "whether the lawsuit imposes a burden on petitioning rights; (2) whether the alleged activities constitute protected petitioning activity; and (3) whether the statute at issue may construed to avoid that burden." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 540–41 (9th Cir. 2022) (B&G Foods) (internal quotations omitted). The answer to all three of the questions in analysis in this case is "yes", and therefore the *Noerr-Pennington* doctrine bars Singer's federal claims against Attorney Waters. *Id.*

In question one, the court analyzes whether a lawsuit imposes a burden on

petitioning rights. "In conducting this inquiry, [federal courts] do not consider any alleged misconduct tied to the petitioning activities," but instead determine whether the lawsuit "places a burden on [defendant's] ability to prosecute its suit." *B&G Foods*, 29 F.4th at 535 (internal quotations omitted). The right to petition "extends to all departments of the government and includes access to courts." *Kearney*, 590 F.3d at 644, citing *Sosa*, 437 F.3d at 929. The Supreme Court has "extended the doctrine to provide immunity for the use of the channels and procedures of state and federal courts to advocate causes." *Id.* (Internal quotations omitted).

Singer's lawsuit clearly places a burden on Attorney Waters' petitioning activity. Singer has based his federal claims on alleged misrepresentations Attorney Waters made in his substitution of attorney and his acceptance of State Court Action minute orders. (Doc. #48, SAC, pp. 3–10, 16–18.) If successful, Singer's lawsuit would completely prevent Attorney Waters from engaging in petitioning activity– filing documents in a state trial court. *Kearney*, 590 F.3d at 644, citing *Sosa*, 437 F.3d at 929. Therefore, the answer to question one of the *Noerr-Pennington* analysis is "yes."

For question two of the *Noerr-Pennington* analysis, federal courts determine whether the defendant's conduct is protected petitioning activity. If the court finds that defendant's conduct is protected petitioning activity, it then decides whether the sham exception to *Noerr-Pennington* applies. *B&G Foods*, 29 F.4th at 535–36. "Noerr-Pennington immunity…[applies] to defensive pleadings." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (*Freeman*).

In this case, Singer is attempting to hold Attorney Waters liable for a document he filed in defense of the State Court Action–the substitution of attorney– and Attorney Waters' acceptance of minute orders the trial court filed in the State Court Action. (Doc. #48, SAC, pp. 3–10, 16–18.) Thus, Attorney Waters' conduct qualifies as petitioning activity protected by *Noerr Pennington*. *Freeman*, 410 F.3d at 1184; *B&G Foods*, 29 F.4th at 540–41.

1    The court next ascertains whether the sham exception to *Noerr-Pennington*

2  applies to the case. "Sham petitioning is not protected" by the *Noerr-Pennington*

3  doctrine. *B&G Foods*, 29 F.4th at 536. There are three circumstances where the

4  sham exception applies in the litigation context: (1) when a lawsuit is objectively

5  baseless; (2) when a party brings a series of meritless lawsuits; and (3) if the

6  allegedly unlawful conduct involves making intentional misrepresentations to the

7  court that deprived the court of its legitimacy. *Id.* at 537–38, quoting *Sosa*, 437 F.3d

8  at 938; *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998).

9    "Litigation activity is considered objectively baseless only where 'no

10  reasonable litigant could realistically expect success on the merits." *Wilson v. Leigh*

11  *Law Grp., P.C. (LLG)*, Case No. 20-cv-03045-MMC, 2020 U.S. Dist. Lexis 124830,

12  at *11 (N.D. Cal. July 14, 2000) (*Wilson*), citing *Prof'l Real Estate Investors, Inc. v.*

13  *Columbia Pictures Indus.*, 508 U.S. 49, 62 (1993). Additionally, an alleged

14  misrepresentation does not deprive the court of its legitimacy if the plaintiff had the

15  opportunity to respond to the alleged misrepresentation in the previous action. *Ezra*

16  *v. Leifer*, Case No. CV 18-871-MWF (KS), 2018 U.S. Dist. Lexis 142005, at *21–

17  22 (C.D. Cal. June 27, 2018) (*Ezra*).

18    Here, the sham exception to *Noerr-Pennington* does not apply. First, the

19  document Attorney Waters filed in the State Court Action was not objectively

20  baseless. Attorney Waters was required by California law to file the substitution of

21  attorney once he changed firms. *See* Cal. Rules of Court, rule 2.200 ("An

22  attorney…whose mailing address, telephone number, fax number, or e-mail

23  address…changes while an action is pending must serve on all parties and file a

24  written notice of the change"). Additionally, none of the minute orders challenged

25  by Singer are objectively baseless because the trial court in the State Court Action

26  issued them. Indeed, this Court is not the correct forum to challenge the validity of

27  state court orders. (*See Rooker-Feldman* section.)

28    Second, this case does not involve a series of meritless lawsuits. This case

involved one lawsuit in which Attorney Waters prevailed. (Doc. #30-8, p. 2 of 4; Doc. #30-10, pp. 1–4.)[2] Therefore, the lawsuit could not have been meritless.

Third, the alleged misrepresentations that Attorney Waters made in his substitution of attorney did not deprive the state court of its legitimacy. Singer had notice of the alleged misrepresentations Attorney Waters made in the document because Attorney Waters served him with it. (Doc. #48, Substitution of Attorney, p. 134 of 150.) However, Singer did not inform the court of any alleged misrepresentations Attorney Waters made. Since Singer chose not to inform the state court of any purported misrepresentations made by Attorney Waters despite having an opportunity to do so, Attorney Waters' alleged misrepresentations did not deprive the State Court Action of its legitimacy. *Ezra*, Case No. CV 18-871-MWF (KS), 2018 U.S. Dist. Lexis 142005, at *21–22; *Alers v. Bank of Am., NA*, Case No. CV 14-611-GW(JCGx), 2014 U.S. Dist. Lexis 199727, at *5–6 (C.D. Cal. Apr. 24, 2014). Because none of the three sham exception circumstances apply to this case, it is evident that Attorney Waters' alleged conduct is petitioning activity protected by the *Noerr-Pennington* doctrine.

In the third *Noerr-Pennington* question, federal courts analyze whether section 1983 "can be construed to avoid burdening [d]efendants' petition clause rights." *B&G Foods*, 29 F.4th at 540. Courts have already noted that the *Noerr-Pennington* doctrine bars section 1983 claims "based on *any* protected petitioning conduct." *Id.* at 540–41, emphasis added; *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000). In this case, Attorney Waters' filing of the substitution of attorney is protected petitioning conduct that did not deprive the State Court Action of legitimacy. Therefore, the answer to question 3 of the *Noerr-Pennington* doctrine is "yes." *Freeman*, 410 F.3d at 1184; *Ezra*, Case No. CV 18-

---

[2] Both of these documents were attached to the Graft Declaration filed in support of the motion to dismiss Singer's first amended complaint. Attorney Waters has requested that this Court take judicial notice of them. (Doc. #31.)

871-MWF (KS), 2018 U.S. Dist. Lexis 142005, at *21–22; *Wilson*, Case No. 20-cv-03045-MMC, 2020 U.S. Dist. Lexis 124830, at *11. Instead, the substitution of attorney provided the state trial court and Singer with accurate information regarding Attorney Waters' new address and change in employer. (Doc. #48, Substitution of Attorney, pp. 133–134 of 150.) If Attorney Waters had not provided all parties with this information, he would have been in violation of the California Rules of Court.

The answer to all three of the *Noerr-Pennington* analysis questions is thus "yes." Correspondingly, the *Noerr-Pennington* doctrine serves an absolute bar to Singer's federal claims, including his section 1983, section 1985, and fraud on the court claims, against Attorney Waters. *B&G Foods*, 29 F.4th at 540–41.

### D. The *Rooker-Feldman* Doctrine Bars Singer's Challenge to the State Court Action Minute Orders.

In his proposed second amended complaint, Singer challenges numerous minute orders the trial court entered during the State Court Action. (Doc. #48, SAC, pp. 4–10.) He also requests that this Court reopen the State Court Action. (Doc. #48, SAC, p. 22.) This court does not have the power to void minute orders entered by the state court or to reopen the State Court Action. "The *Rooker-Feldman* doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (*Cooper*). The *Rooker-Feldman* doctrine also bars claims that function as de facto appeals from state court orders or judgments. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2002) (*Noel*). "It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Cooper*, 704 F.3d at 778, citing Noel, 341 F.3d at 1163. "*Rooker-Feldman* is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers…inviting district court review and rejection of [the

state court's] judgments." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (*Skinner*) (internal quotations omitted).

Here, Singer's decision to challenge state court minute orders and his request to reopen the State Court Action in his proposed second amended complaint run afoul of the *Rooker-Feldman* doctrine. Indeed, his proposed complaint presents the exact scenario that the Supreme Court and the Ninth Circuit wish to bar. Singer is a state court "loser" who is seeking to void various minute orders entered by the trial court in the State Court Action in his federal complaint. (Doc. #48, SAC, pp. 4–10.) He is also seeking to reopen the State Court Action. (Doc. #48, SAC, p. 22.) This Court does not have jurisdiction to consider Singer's request. *Cooper*, 704 F.3d at 777–78; Noel, 341 F.3d at 1155, 1163; *Skinner*, 562 U.S. at 532.

### E. Singer Does Not Plead a Cognizable Claim For Fraud on the State Court in His Proposed Second Amended Complaint.

Singer's proposed second amended complaint contains a fraud on the court claim arising from the substitution of Attorney Waters filed in the State Court Action. (Doc. #48, SAC, p. 18.) FRCP 60(b) allows plaintiffs to set aside judgments obtained through fraud. However, FRCP 60(b) "applies only to a federal court's judgment. Federal district courts do not have appellate jurisdiction over state court judgments." *Young v. Burlingham*, Case No. 2:22-cv-01712-DAD-JDP (PS), 2023 U.S. Dist. LEXIS 133215 at *6 (E.D. Cal. July 31, 2023). Thus, Singer cannot utilize his fraud on the court claim to vacate the judgement or any order in the State Court Action.

Additionally, even if FRCP 60(b) applied to state court orders and judgments, Singer has not plead a cognizable claim for fraud on the court. First, there is no private right of action for fraud on the court under FRCP 60(b). *Montez v. Chase Home Fin. LLC*, Case No. 3:18-cv-02899-BEN-LL, 2019 U.S. Dist. LEXIS 73809 at *6 (S.D. Cal. May 1, 2019). A plaintiff may not recover damages from a fraud on the court claim. *Lake v. Scheidt*, Case No. 6:20-cv-00850-AA, 2021 U.S. Dist.

LEXIS 150996 at \*4 (D. Or. Aug. 11, 2021). "Instead, it is a theory pursuant to which a party may seek relief from a judgment or court order induced based on the opposing party's fraud. *Id.*, citing *Montez*, Case No. 3:18-cv-02899-BEN-LL, 2019 U.S. Dist. LEXIS 73809 at \*6. Thus, Singer is barred from seeking damages arising from his purported fraud on the court claim.

Finally, Singer's proposed second amended complaint does not meet the requirements of a fraud on the court claim. "In order to set aside a judgment or order because of fraud upon the court under Rule 60(b)…it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960). "We have held that '[w]hen we conclude that the integrity of the judicial process has been harmed . . . and the fraud rises to the level of an unconscionable plan or scheme which is designed to improperly influence the court in its decisions, we not only can act, we should." *Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 1000 (9th Cir. 2014) (*Hendricks*), citing *Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003).

Singer's complaint does not allege a scheme by Attorney Waters to improperly influence the court in the State Court Action. The substitution of attorney Waters filed in the State Court Action does not contain a misrepresentation. Attorney Waters filed it to inform the parties in the State Court Action that he had changed firms and addresses. (Doc. #48, Answer, p. 97 of 150; Doc. #48, Substitution of Attorney, pp. 133–134 of 150.) Indeed, if Attorney Waters had not filed the substitution informing all of the parties of his new address and new firm, he would have been incompliant with the California Rules of Court. *See* Cal. Rules of Court, rule 2.200 ("An attorney…whose mailing address, telephone number, fax number, or e-mail address…changes while an action is pending must serve on all parties and file a written notice of the change"). Thus, the substitution of attorney did not contain a misrepresentation, and instead provided Singer with necessary information regarding the litigation. (Doc. #48, Substitution of Attorney, pp. 133–

134 of 150.)

At worst, Singer alleged that Attorney Waters may have utilized the wrong state court form when Attorney Waters informed Singer that Attorney Waters had changed firms. (Doc. #48, SAC, p. 11.) This does not rise to the level of a scheme to improperly influence the court.

Attorney Waters' filing of the substitution of attorney therefore does not amount to a plan or scheme to improperly influence the trial court in the State Court Action. Nor did the trial court in the State Court Action rely upon it when it dismissed the State Court Action. *Hendricks*, 766 F.3d at 1000; *England*, 281 F.2d at 309. Singer has not alleged a viable claim for fraud on the court.

## IV.   CONCLUSION

For the foregoing reasons, Attorney Waters respectfully requests that this Court deny Singer's Motion for Leave to File Second Amended Complaint. The Court is requested to proceed with the pending motion to dismiss and anti-SLAPP motions which are presently under submission.

DATED:  September 15, 2025        LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    */s/ Alex A. Graft*
ALEX A. GRAFT
Attorneys for Defendant CRAIG C.O.
WATERS, ESQ.

1

**FEDERAL COURT PROOF OF SERVICE**
*Singer v. Waters*
U.S.D.C., Eastern District, Case No. 1:25-cv-00532-KES-SAB

2

3    STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

4    At the time of service, I was over 18 years of age and not a party to the action. My business address is 45 Fremont Street, Suite 3000, San Francisco, CA 94105. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

5

6    On September 16, 2025, I served the following document(s): **DEFENDANT CRAIG C.O. WATERS, ESQ.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**.

7

8    I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

9

| **Plaintiff Pro Per** | **Attorneys for Defendants** |
|---|---|
| Paul V. Singer | **KRISTINA CHARLES (erroneously sued as** |
| 4928 E. Washington Avenue | **KRISTIN CHARLES), LOUISA** |
| Fresno, CA 93727 | **AYRAPETYAN,** |
| Phone: 559-871-6400 | **BRANDON N. STALLINGS** |
| *Via U.S. Mail* | ELLIN DAVTYAN |
| | General Counsel |
| | KIRSTEN GALLER |
| | Deputy General Counsel |
| | JENNIFER SPERLING |
| | Assistant General Counsel |
| | OFFICE OF GENERAL COUNSEL |
| | THE STATE BAR OF CALIFORNIA |
| | 845 South Figueroa Street |
| | Los Angeles, CA 90017 |
| | Phone: 213-765-1000 |
| | Fax:   415-538-2321 |
| | Email: jennifer.sperling@calbar.ca.gov |

19    The documents were served by the following means:

20    ☒    (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

21

22    ☒    (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

23

24    I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

25

26    Executed on September 16, 2025, at San Francisco, California.

27

28
*/s/ Nancy Lew-Pham*
Nancy Lew-Pham

162787254.1                                    1                     Case No. 1:25-cv-00532-KES-SAB